No. 21-50964

# In the United States Court of Appeals for the Fifth Circuit

JEROME CORSI, INDIVIDUALLY;  LARRY KLAYMAN, INDIVIDUALLY

*Plaintiffs–Appellants,*

v.

INFOWARS, L.L.C.; FREE SPEECH SYSTEMS, L.L.C.; ALEX E. JONES, INDIVIDUALLY; DAVID JONES, INDIVIDUALLY; OWEN SHROYER, INDIVIDUALLY; ROGER STONE

*Defendants–Appellees.*

On Appeal from the U.S. District Court,
Western District of Texas Austin Division
No. 1:20-cv-00298-LY

## ANSWERING BRIEF OF APPELLEES INFOWARS, LLC, FREE SPEECH SYSTEMS, LLC, ALEX E. JONES, AND OWEN SHROYER

Marc J. Randazza
Jay M. Wolman
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: (702) 420-2001
ecf@randazza.com

Bradley J. Reeves
REEVES LAW, PLLC
702 Rio Grande Street, Ste. 306
Austin, Texas 78701
Tel: (512) 827-2246
brad@brtx.law

*Counsel for Appellees Infowars, LLC, Free Speech Systems, LLC, Alex E. Jones, and Owen Shroyer.*

# CERTIFICATE OF INTERESTED PERSONS

Appellees Infowars, LLC, Free Speech Systems, LLC, Alex E. Jones, and Owen Shroyer hereby certify, pursuant to Fifth Circuit rule 28.2.1, that the following list of persons and entities have an interest in the outcome of this appeal:

1.    Jerome Corsi – Plaintiff-Appellant.

2.    Larry Klayman – Plaintiff-Appellant and Counsel for Dr. Jerome Corsi (on appeal; disqualified below).

3.    Sanjay Biswas – Counsel for Dr. Jerome Corsi.

4.    Infowars, LLC, Free Speech Systems, LLC, Alex E. Jones, Owen Shroyer, David Jones, and Roger Stone – Defendants-Appellants.

5.    Marc J. Randazza and Jay Marshall Wolman of Randazza Legal Group, PLLC; Bradley Reeves of Reeves Law, PLLC; David S. Wachen of Wachen LLC; Gregory Philip Sapire of Soltero Sapire Murrell PLLC; and Robert C. Buschel of Buschel Gibbons, P.A. – Counsel for Defendants-Appellees.


DATED:    February 16, 2022.          Respectfully submitted,

                                               /s/ *Marc J. Randazza*
                                               Marc J. Randazza

Attorney for Appellees
Infowars, LLC, Free Speech
Systems, LLC, Alex E. Jones,
and Owen Shroyer

## STATEMENT REGARDING ORAL ARGUMENT

Appellees Infowars, LLC, Free Speech Systems, LLC, Alex E. Jones, and Owen Shroyer (collectively, "Infowars Appellees") do not believe that oral argument is necessary, but will appear and argue should the Court believe it would significantly aid the Court's decision-making process. Appellants fail to explain why oral argument would aid the Panel in rendering a decision. The issues in this appeal are neither novel nor complex, and if oral argument is held, Appellants and their counsel will likely spend considerable time raising frivolous, unsupported, and irrelevant arguments, including baseless attacks on the partiality of the District Court.

# TABLE OF CONTENTS

*Certificate of Interested Persons*.................................................................. *ii*

*Statement Regarding Oral Argument*.......................................................... *iv*

*Table of Authorities* ......................................................................................*vi*

*Issues Presented for Appeal* ......................................................................... *1*

*Statement of the Case* ................................................................................... *2*

    **1.0   Factual Background** .............................................................. 2

    **2.0   Procedural History** .............................................................. 8

*Summary of the Argument* ........................................................................ *15*

*Argument* ......................................................................................................*17*

    **1.0    Standard of Review** ...........................................................17

    **2.0    The District Court Properly Dismissed Appellants' Claims** ...18

        2.1    There is No Significant Conflict of Laws as to the Claims..............18

        2.2    Appellants Failed to Plead a Claim for Defamation........................20

            2.2.1 Infowars Appellees' Statements are Not Actionable....................22

                2.2.1.1  Statements Concerning Corsi ....................................27

                2.2.1.2  Statements Concerning Klayman.........................................33

             2.2.2 Appellants Failed to Plausibly Allege Actual Malice .................36

             2.2.3 Appellants Failed to Comply with the TDMA .............................42

        2.3    Appellants Failed to Plead an Intentional Infliction of Emotional Distress or Assault Claim ................................................................45

        2.4    Appellants Failed to Plausibly Plead a Lanham Act Claim............46

        2.5    Infowars Appellees Did Not Act in Concert With any Other Party 51

    **3.0    The District Court Properly Denied Leave to Amend**..............54

        3.1    Failure to Request Amendment........................................................55

        3.2    Appellants' Request to Amend Was Untimely ................................56

        3.3    Appellants Repeatedly Failed to Cure Deficiencies........................58

        3.4    Appellants' Proposed Amendment is Futile ....................................60

    **4.0    The District Court Properly Stayed Discovery**.........................62

*Conclusion* ................................................................................................... *63*

*Certificate of Service*................................................................................... *65*

*Certificate of Compliance* .......................................................................... *66*

## CASES

*600 W. 115th Corp. v. Von Gutfeld*,
   80 N.Y.2d 130, 141, 603 N.E.2d 930 (1992) ........................................ 24

*Accord Thompson*,
   764 S.W.2d ............................................................................................ 27

*Alliance for Good Government v. Coalition for Better Government*,
   901 F.3d 498 (5th Cir. 2018) .............................................................. 45

*Arrowood Indem. Co. v. Gulf Underwriters Ins. Co.*,
   No. EP-08-CV-285-DB, 2010 U.S. Dist. LEXIS 152771 (W.D. Tex.
   Mar. 3, 2010) ...................................................................................... 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................ 51

*Baber v. Edman*,
   719 F.2d 122 (5th Cir. 1983) .............................................................. 44

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................ 38

*Bentley v. Bunton*,
   94 S.W.3d 561 (Tex. 2002) ........................................................... 23, 26

*Bolger v. Youngs Drug Prods. Corp.*,
   463 U.S. 60 (1983) ........................................................................ 47, 50

*Bose Corp. v. Consumers Union*,
   466 U.S. 485 (1984) ............................................................................ 39

*Butowsky v. Folkenflik*,
   Civil Action No. 4:18CV442, 2019 U.S. Dist. LEXIS 104297 (E.D. Tex.
   Apr. 17, 2019) .................................................................................... 44

*Cain v. Hearst Corp.*,
   878 S.W.2d 577 (Tex. 1994) .............................................................. 22

*Carr v. Brasher*,
   776 S.W.2d 567 (Tex. 1989) ......................................................... 20, 23

*Casa Orlando Apts., Ltd. v. Fannie Mae*,
   624 F.3d 185 (5th Cir. 2010) ........................................................ 18, 19

*Castleman v. Internet Money Ltd.*,
   No. 07-16-00320-CV, 2018 Tex. App. LEXIS 8559 (Tex. App. Oct. 18,
   2018).................................................................................................... 22

*Cavallini v. State Farm Mut. Auto Ins. Co.*,
   44 F.3d 256 (5th Cir. 1995) .............................................................. 45

*Chapin v. Knight-Ridder, Inc.*,
    993 F.2d 1087 (4th Cir. 1993) ............................................................ 29

*Chevalier v. Animal Rehab. Ctr.*,
    839 F. Supp. 1224 (N.D. Tex. 1993) .................................................... 19

*City of Clinton v. Pilgrim's Pride Corp.*,
    632 F.3d 148 (5th Cir. 2010) ................................................................ 17

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) ................................................................ 27

*Coronado v. Freedom Communs., Inc.*,
    No. 13-13-00525-CV, 2015 Tex. App. LEXIS 10128 (Tex. App. Sept.
    30, 2015).................................................................................................. 23

*Corsi v. Caputo*,
    Case No. 1:19-cv-01573 (D.D.C. removed May 29, 2019) ...................... 2

*Corsi v. Newsmax Media, Inc.*,
    519 F. Supp. 3d 1110 (S.D. Fla. 2021).................................................... 2

*Corsi v. Stone*,
    CACE20004473, Broward Cty. (Fla. 17th Jud. Cir. filed Mar. 11,
    2020)......................................................................................................... 2

*Corsi v. Stone*,
    Case No. 1:19-cv-00324 (D.D.C. filed Feb. 7, 2019) .......................... 2, 4

*Corsi v. Stone*,
    Case No. 50-2019-CA-013711-XXXX-MB, Palm Beach Cty. (Fla. 15th
    Jud. Cir. filed Oct. 23, 2019) .................................................................. 2

*Corsi v. Stone*,
    No. 2019CA013711AXX (Palm Beach Cty., Fla., Aug. 12, 2020).. 33, 53

*Dallas Morning News, Inc. v. Tatum*,
    554 S.W.2d 614 (Tex. 2018) ................................................................. 23

*Davis v. Allstate Fire & Cas. Ins. Co.*,
    Civil Action No. 4:18-CV-00075, 2018 U.S. Dist. LEXIS 109574 (E.D.
    Tex. June 29, 2018) .............................................................................. 44

*DeAngelis v. Hill,*
    180 N.J. 1, 847 A.2d 1261 (N.J. 2004).................................................. 21

*Farah v. Esquire Magazine*, 736 F.3d 528 (D.C. Cir. 2013) ............... 3, 46

*Fojtik v. First Nat'l Bank of Beeville,*
    752 S.W.2d 669 (Tex. App.--Corpus Christi 1988), writ denied per
    curiam, 775 S.W.2d 632 (Tex. 1989)..................................................... 52

*Gardner v. Martino,*
    563 F.3d 981 (9th Cir. 2009) ................................................................ 23

*Garrison v. Louisiana*,
  379 U.S. 64 (1964) ....................................................... 37, 38
*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974) .......................................................... 36
*Green v. CBS Inc.*,
  286 F.3d 281 (5th Cir. 2002).............................................. 20
*Harte-Hanks Communications, Inc. v. Connaughton*,
  491 U.S. 657 (1989) ..................................................... 37, 38
*Hearst Newspapers, LLC v. Status Lounge, Inc.*,
  541 S.W.3d 881 (Tex. App. 2017)....................................... 44
*Herring Networks, Inc. v. Maddow*,
  8 F.4th 1148 (9th Cir. 2021) ............................................. 24
*Horsley v. Rivera*,
  292 F.3d 695 (11th Cir. 2002) ........................................... 30
*Hosein v. Gonzales*,
  452 F.3d 401 (5th Cir. 2006) ............................................. 17
*Jews For Jesus, Inc. v. Rapp*,
  997 So. 2d 1098 (Fla. 2008)............................................... 21
*KBMT Operating Co., LLC v. Toledo*,
  492 S.W.3d 710 (Tex. 2016) .............................................. 22
*King v. Jarrett*,
  2016 WL 11581949 (W.D. Tex. June 17, 2016) (Yeakel, J.) ............... 51
*Klayman v. City Pages*,
  2015 U.S. Dist. LEXIS 49134 (M.D. Fla. Apr. 3, 2015) ..................... 4
*Klayman v. Infowars*,
  Case No. 9:20-cv-80614-RKA (S.D. Fla. filed Apr. 8, 2020) ................. 2
*Klayman v. Infowars, LLC*,
  Case No. 0:20-cv-61912 (S.D. Fla. removed Sept. 18, 2020). ...... 2, 8, 58
*Klayman v. Judicial Watch, Inc.*,
  22 F. Supp. 3d 1240 (S.D. Fla. 2014)..................................... 4
*Klayman v. Judicial Watch, inc.*,
  247 F.R.D. 10 (D.D.C. 2007) ........................................ 34, 35
*Klayman v. Judicial Watch, Inc.*,
  802 F. Supp. 2d 137 (D.D.C. 2011) ...................................... 34
*Klayman v. Segal*,
  783 A.2d 607 (D.C. 2001) ............................................ 26, 27
*Klayman v. Stone*,
  CACE19002672, Broward Cty. (Fla. 17th Jud. Cir. filed Feb. 5, 2019) 2

*Klayman v. Stone*,
   CACE19011394, Broward Cty. (Fla. 17th Jud. Cir. May 28, 2019) ..... 2

*Klayman v. Stone*,
   Case No. 50-2019-CA-015104-XXXX-MB, Palm Beach Cty. (Fla. 15th
   Jud. Cir. filed Nov. 25, 2019) .............................................................. 2

*Lexmark Int'l v. Static Control Comps.*,
   572 U.S. 118 (2014) ............................................................................. 46

*Lynch v. Cannatella*,
   810 F.2d 1363 (5th Cir. 1987) .............................................................. 50

*McDougal v. Fox News Network, LLC*,
   489 F. Supp 3d 174 (S.D.N.Y. 2020) .................................................... 24

*Nat'l Union Fire Ins. Co. v. Am. Eurocopter Corp.*,
   692 F.3d 405 (5th Cir. 2012) ................................................................ 18

*Nelson Radio & Supply Co. v. Motorola, Inc.*,
   200 F.2d 911 (5th Cir. 1952), cert. denied, 345 U.S. 925 (1953)......... 52

*New York Times v. Sullivan*,
   376 U.S. 254 (1964) ...................................................................... 37, 39

*Nichols v. Club for Growth Action*,
   235 F. Supp. 3d 289 (D.D.C. 2017) ...................................................... 45

*North Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*,
   898 F.3d 461 (5th Cir. 2018) ................................................................ 59

*O'Hair v. Skolrood*,
   Civil Action No. A-89-CA-769, 1990 U.S. Dist. LEXIS 14928 (W.D.
   Tex. May 4, 1990) ................................................................................. 37

*Palomo v. United States,*
   No. 1:96cv329GR, 1997 U.S. Dist. LEXIS 24103 (S.D. Miss. Mar. 14,
   1997)...................................................................................................... 20

*Peter Scalamandre & Sons v. Kaufman*,
   113 F.3d 556 (5th Cir. 1997) ................................................................ 38

*Phillips v. Washington Magazine, Inc.*,
   58 Md. App. 30 (1984) .......................................................................... 31

*Pittsburgh Press Co. v. Pittsburgh Com. on Human Relations*,
   413 U.S. 376 (1973) .............................................................................. 47

*Porous Media Corp. v. Pall Corp.*,
   173 F.3d 1109 (8th Cir. 1999) .............................................................. 49

*Porter v. Charter Med. Corp.*,
   957 F. Supp. 1427 (N.D. Tex.1997) ..................................................... 44

*Procter & Gamble Co. v. Haugen*,
  222 F.3d 1262 (10th Cir. 2000) ...................................................... 48, 49

*Randall's Food Mkts. v. Johnson*,
  891 S.W.2d 640 (Tex. 1995) ................................................................ 22

*Reece v. U.S. Bank Nat'l Ass'n*,
  762 F.3d 422 (5th Cir. 2014) ................................................................ 17

*Rehak Creative Servs. v. Witt*,
  404 S.W.3d 716 (Tex. App. 2013) ........................................................ 30

*Ross v. Abbott*,
  No. 1:12-CA-540-LY, 2013 U.S. Dist. LEXIS 203997 (W.D. Tex. July
  19, 2013) (Yeakel, J.) ........................................................................... 21

*S & W Enters., LLC v. Southtrust Bank of Ala.,*
  *NA*, 315 F.3d 533 (5th Cir. 2003) ........................................................ 56

*Schnare v. Ziessow*,
  104 F. App'x 847 (4th Cir. 2004) ......................................................... 30

*Smith v. California*,
  361 U.S. 147 (1959) ............................................................................... 41

*St. Amant v. Thompson*,
  390 U.S. 727 (1968)] .............................................................................. 38

*Steinhausen v. Homeservices of Neb.*, Inc.,
  289 Neb. 927 (2015) ............................................................................. 36

*Steptoe v. JPMorgan Chase Bank NA*,
  2013 U.S. Dist. LEXIS 4942 (S.D. Tex. Jan. 12, 2013) ...................... 57

*Sw. Bell Tel. Co. v. City of El Paso*,
  346 F.3d 541 (5th Cir 2003) ................................................................. 57

*The King v. Ewart*,
  25 N. Z. L. R. 709 (C. A.) ..................................................................... 41

*Tobinick v. Novella*,
  848 F.3d 935 (11th Cir. 2017) ................................................. 47, 48, 50

*Toyota Motor Co. v. Cook*,
  581 S.W.3d 278 (Tex. App. 2019) ........................................................ 20

*Triplex Communications, Inc. v. Riley*,
  900 S.W.2d 716 (Tex. 1995) ................................................................. 51

*Tubbs v. Nicol*,
  675 F. App'x 437 (5th Cir. 2017) .................................................... 42, 44

*United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*,
  336 F.3d 375 (5th Cir. 2003) ................................................... 17, 54, 58

x

*United States v. Stone*,
   2019 U.S. Dist. LEXIS 28860 (D.D.C. Feb. 15, 2019). ..................... 3, 4
*Walker v. Beaumont Indep. Sch. Dist.*,
   938 F.3d 724 (5th Cir. 2019) ........................................................ 37, 43
*WFAA-TV, Inc. v. McLemore*,
   978 S.W.2d 568 (Tex. 1998) .............................................................. 20
*Wilson v. Bruks-Klockner, Inc.*,
   602 F.3d 363 (5th Cir. 2010) ............................................................. 17
*Woolley v. Clifford Chance Rogers & Wells, L.L.P.*,
   2004 U.S. Dist. LEXIS 97, 2004 WL 57215 (N.D. Tex. Jan. 5, 2004) . 43
*Yiamouyiannis v. Thompson*,
   764 S.W.3d 338 (Tex. App.—San Antonio 1988, writ denied) ........... 26

## STATUTES

Fla. Stat. § 770.01 ...................................................................... 43
N.J. Stat. § 2A:43-2 .................................................................... 43
Texas Deceptive Trade Practice Act ........................................... 44
Texas Defamation Mitigation Act ("TDMA") ....................... 15, 42, 43, 44
The Lanham Act ................................................ 7, 8, 15, 45, 46, 48, 60

## OTHER AUTHORITIES

Restatement (Second) of Conflict of Laws § 145 .................................. 19
Restatement (Second) of Torts § 558 (1977) ......................................... 21
Restatement (Second) of Torts, § 577, cmt. f ....................................... 52
Restatement § 154 cmt. e ......................................................................... 19

## RULES

Tex. Civ. Prac. & Rem. Code § 73.055 .................................................. 42
15 U.S.C. §1125 ..................................................................................... 45
Fed. R. Civ. P. 10 ................................................................................... 27
Fed. R. Civ. P. 12 ................................. 1, 10, 17, 21, 41, 54, 59, 61, 62
Fed. R. Civ. P. 15 ............................................................................ 54, 55
Fed. R. Civ. P. 16 ................................................................................... 56
Fed. R. Civ. P. 26 ................................................................................... 11
Fed. R. Civ. P. 72 ....................................................... 1, 11, 16, 61
Tex. Civ. Prac. & Rem. Code § 16.002 ......................................... 42, 43

## ISSUES PRESENTED FOR APPEAL

1.　　Whether the District Court correctly dismissed Appellants' claims as to Infowars Appellees where Infowars Appellees did not make most of the complained-of statements, none of the statements were actionable under Texas law, Appellants did not provide pre-suit notice, and none of the statements constituted commercial speech.

2.　　Whether the District Court properly dismissed Appellants' claims without leave to amend where Appellants failed to timely request leave and their proposed amendment would have been futile.

3.　　Whether Appellants may challenge on appeal the Magistrate Judge's order staying discovery during the pendency of the Rule 12 motions when Appellants failed to seek relief under Fed. R. Civ. P. 72(a) regarding this order.

## 1.0    Factual Background

This case is part of a vexatious litigation campaign across the country.  Mr. Klayman, counsel and client in this case, has filed no fewer than 10 related lawsuits.[1] Beyond that, the vexatious campaign includes a series of lawsuits against bar officials and those who have reported on

---

[1]    These cases are: (1) *Klayman v. Stone*, CACE19002672, Broward Cty. (Fla. 17th Jud. Cir. filed Feb. 5, 2019); (2) the instant case; (3) *Klayman v. Stone*, CACE19011394, Broward Cty. (Fla. 17th Jud. Cir. filed May 28, 2019);  (4) *Corsi v. Stone*, Case No. 50-2019-CA-013711-XXXX-MB, Palm Beach Cty. (Fla. 15th Jud. Cir. filed Oct. 23, 2019); (5) *Klayman v. Stone*, Case No. 50-2019-CA-015104-XXXX-MB, Palm Beach Cty. (Fla. 15th Jud. Cir. filed Nov. 25, 2019); (6) *Corsi v. Stone*, CACE20004473, Broward Cty. (Fla. 17th Jud. Cir. filed Mar. 11, 2020); (7) *Klayman v. Infowars*, Case No. 9:20-cv-80614-RKA (S.D. Fla. filed Apr. 8, 2020); (8) *Corsi v. Stone*, Case No. 1:19-cv-00324 (D.D.C. filed Feb. 7, 2019); (9) *Corsi v. Caputo*, Case No. 1:19-cv-01573 (D.D.C. removed May 29, 2019); and (10) *Klayman v. Infowars, LLC*, Case No. 0:20-cv-61912 (S.D. Fla. removed Sept. 18, 2020).

The claims in the Palm Beach 013711 case were re-filed in a case removed to the Southern District of Florida against all defendants other than Stone, which were dismissed. *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1120-22 (S.D. Fla. 2021) (dismissing claims by Corsi brought by Klayman, arising from statements made by third party, attributed to Stone, rejecting theories of agency, ratification, and conspiracy similar to those asserted here).

Klayman's legal troubles, which are too numerous to list. All of them are for defamation.

In this iteration, Klayman has hitched his wagon to Jerome Corsi. Appellant Dr. Jerome Corsi is "an author and political commentator." (ROA.769, ¶3.) He lauds himself as "a 'world-renowned author of several New York Times bestsellers,'" a claim he repeats in this litigation. *Farah v. Esquire Magazine*, 736 F.3d 528, 531 (D.C. Cir. 2013) (quoting Corsi's own claims) and ROA.1364, ¶8. He voluntarily injected himself into Roger Stone's high-profile prosecution as part of Special Counsel Robert Mueller's investigation related to the 2016 presidential election. *See., e.g., United States v. Stone*, 2019 U.S. Dist. LEXIS 28860, *2 (D.D.C. Feb. 15, 2019). Corsi highlights he is a frequent guest on national radio and television shows, including Fox News and CNN (ROA.1364, ¶12), and he has "conducted thousands of radio interviews going to 2004." (ROA.1366, ¶19.)[2] Appellees have not disputed these allegations.

---

[2] Some of these facts are taken from Corsi's declaration attached to his opposition to the parties' various motions to dismiss. The District Court properly declined to consider this extrinsic evidence in deciding the motions to dismiss, but these facts are cited here in the event this Court chooses to consider such evidence for any purpose.

Appellant Larry Klayman alleges he is "a public interest legal advocate, private practitioner and litigator who represented Plaintiff Corsi with regard to Special Counsel Robert Mueller's Russian collusion investigation." (ROA.769, ¶4.) He also claims to be "a media personality and author, columnist and syndicated radio talk show host." (*Id*.) He has been found by other courts, and has admitted to being, a public figure. *See Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1251 (S.D. Fla. 2014) (finding that "[b]ecause of Klayman's notoriety and high-profile work in the public realm, the Court considers Klayman a public figure"); *see also Klayman v. City Pages*, 2015 U.S. Dist. LEXIS 49134, *39 (M.D. Fla. Apr. 3, 2015) (noting that "Plaintiff has conceded that he is a public figure"). Klayman also voluntarily injected himself into the Roger Stone controversy by representing Corsi. *Stone*, 2019 U.S. Dist. LEXIS 28860 at *2. As with Corsi's allegations, Appellees do not contest the totality of these allegations – Klayman is a famous public figure.

Appellee Alex E. Jones is a media personality who hosts radio shows through the entity Free Speech Systems, LLC ("FSS") under the

"Infowars" brand.[3] (ROA.769, ¶¶6-7, 11-12.) Appellee Owen Shroyer is an Infowars newscaster. (ROA.770, ¶¶9, 13.) Infowars Appellees promote and sell various goods with Infowars branding. (ROA.771, ¶15.)

Appellants' claims are premised primarily on statements made by Roger Stone while he appeared on Infowars Appellees' broadcast radio and internet programs. Appellant Corsi alleges the following facts against Infowars Appellees:

**a) Alex Jones**:

I.    October 26, 2018 Video: Mr. Jones says Corsi "**seemed** to be mentally degraded to the point of **what I would call** dementia"; says he saw Corsi at a steakhouse "not even knowing he was there he walks in eats by himself and then falls down on the ground and I had five security people with me . . . [Corsi's] on the ground at another table we had to help him out of there man they thought he was dead in the elevator" based on these third parties "listening to his chest"; says he thinks Corsi "had a stroke or whatever's going on with Corsi that whatever comes out of his mouth ain't the truth . . . I think he's got dementia or a stroke I mean I don't know . . . he's a really sharp brain up until about a year ago," followed by Jones talking about a similar mental decline his grandfather suffered following a heart attack. (ROA.779, ¶¶42-44, ROA.227-231) (emphasis added.)

---

[3] Appellants lump Appellee Infowars, LLC, with Free Speech Systems, LLC. In reality, Infowars, LLC, had nothing to do with the broadcasts at issue, despite its name. However, for purposes of the motions to dismiss and this appeal, Appellees argued as though the fiction were true.

II. January 21, 2019 Video: Mr. Jones allegedly accused Corsi of being a "spook, back and forth with different agencies" and that Corsi is "super smart unless you catch him when he can't walk." (ROA.784, ¶¶67-68, ROA.293-294.)

**b) Infowars and FSS**:[4]

I. January 17, 2019 Video: Roger Stone allegedly said that Corsi was "willing to bear false witness." (ROA.783, ¶64.)

II. January 21, 2019 Video: Roger Stone allegedly said that Corsi was "lying" about Stone, Infowars, Alex Jones, and David Jones, and that Corsi was "deep state," calling him a "fraudster" who "made up lies" in an "alcoholic haze." (ROA.783-784, ¶¶65-66.)

**c) Owen Shroyer**:[5]

I. January 18, 2019 Video: Roger Stone allegedly said on a program Shroyer hosted that Corsi was "fired from WorldNetDaily"; that Corsi perjured himself; that Corsi had a "feeble alcohol affected memory"; that Corsi " was perfectly prepared to bear false witness"; that Corsi made up a story; and that Corsi is "lying because his lips are moving." (ROA.780-781, ¶¶49-54.)

Appellants do not identify a single statement allegedly uttered by any Infowars Appellee concerning Klayman. Stone's statements regarding Klayman were made in a January 18, 2019 video in which he

_____

[4] No employee or agent of any Infowars Appellee made these statements, but Corsi asserts that they are liable for Roger Stone's statements made on the Infowars broadcast.

[5] No employee or agent of Mr. Shroyer made these statements, but Corsi asserts that he is liable for Roger Stone's statements made on the broadcast.

said that Klayman "never actually won a courtroom victory"; that Klayman was "ousted" from employment due to sexual misconduct; and that Klayman is a "piece of garbage," "a numbskull," "an idiot," "an egomaniac," and "could be the single worst lawyer in America" whose IQ is not "higher than 70." (ROA.781-782, ¶¶55-56, 59, 61-62.)

The amended complaint contains conclusory allegations that Appellants are in competition with Infowars Appellees. (ROA.782-783, 785-786, ¶¶63, 70-74.) The FAC also alleges that Infowars Appellees assaulted them by virtue of Stone's conduct, but there is no mention of this alleged assault in Appellants' Initial Brief. The FAC additionally contains a significant amount of immaterial allegations that are wholly irrelevant to Appellants' claims and were included to insult Appellees.

Appellants' claims below are far from their first attempt to include numerous persons in their personal grudge with Stone. Klayman filed a nearly identical complaint in the U.S. District Court for the Southern District of Florida. (ROA.668-714.)[6] *Sua sponte*, Judge Roy Altman issued

---

[6] Though Corsi is not named as a plaintiff in the caption of this complaint, it exhaustively recounts Corsi's grievances with Stone and repeatedly refers to Corsi as a plaintiff in the body of the complaint. (ROA.670, 672-673, 675-676, 680-681 at ¶¶3, 15, 27, 48.)

an Order Requiring More Definite Statement, requiring Klayman to "remove all references to irrelevant, conclusory, and scandalous material" and, if he were to replead the Lanham Act claim, show cause that he had standing to do so. (ROA.715-722.) Rather than comply with the order, Klayman dismissed that action. (ROA.723-728.) Subsequently, a different judge in that court found nearly identical claims by Klayman against Infowars Appellees to constitute a shotgun pleading that could not survive dismissal. *Klayman v. Infowars, LLC, et al.*, Case No. 0:20-cv-61912 (S.D. Fla. Nov. 18, 2020) (Gayles, U.S.D.J.). Corsi also brought very similar claims in a Florida state court that were dismissed against Stone. (ROA.1127-1155.)

## 2.0   Procedural History

Appellants initially filed their complaint in the U.S. District Court for the District of Columbia on March 7, 2019 asserting claims for (1) defamation; (2) defamation *per se*; (3) defamation by implication; (4) intentional infliction of emotional distress; (5) assault; and (6) unfair competition under the Lanham Act. (ROA.25-133.) Infowars Appellees filed a motion to dismiss this complaint for lack of personal jurisdiction, improper venue, and failure to state a claim on April 8, 2019. (ROA.195-

8

223.)[7] Appellants filed their opposition on May 13, 2019 (ROA.311-337) and Infowars Appellees filed their reply on May 20, 2019 (ROA.407-419.)[8] On March 10, 2020, the D.C. District Court entered an order granting Infowars Appellees' motion to dismiss in part and transferring the case to the Western District of Texas. (ROA.508-514.)

After miscellaneous proceedings following transfer, the District Court entered a scheduling order on July 17, 2020, setting, *inter alia*, the deadline to file amended pleadings as November 1, 2020, and also requiring Appellants to provide Rule 26(b) disclosures and designations by that day. (ROA.764-766.) Appellants then filed an amended complaint on July 29, 2020, asserting the same claims for relief as in the initial complaint with no changes to address the faults identified in Infowars Appellees' prior motion to dismiss, but adding further irrelevant material and naming Roger Stone as a defendant. (ROA.767-879.) On August 26, 2020, Appellee Owen Shroyer filed a motion to dismiss the amended complaint for failure to state a claim. (ROA.896-913.) Appellees Infowars,

---

[7] This was the first time Infowars Appellees notified Appellants how their claims were defective.

[8] This was the second time Infowars Appellees notified Appellants how their claims were defective.

Alex Jones, and FSS then filed motions to dismiss the amended complaint as to Klayman and Corsi separately. (ROA.1101-1126, 1156-1182.)[9] On September 30, 2020, Appellants filed separate omnibus responses to Infowars Appellees' motions to dismiss. (ROA.1275-1340, 1341-1379.) They attached to this opposition declarations from Klayman and Corsi purporting to explain how Appellees acted with actual malice, despite testifying almost exclusively about their relationship with Roger Stone. (ROA.1302-1316, 1363-1373.) Infowars Appellees filed their replies on October 8, 2020, including an explanation of how Appellants' declarations were extrinsic evidence that could not be considered on a Rule 12(b)(6) motion. (ROA.1469-1480, 1485-1496, 1501-1509.)[10]

On October 29, 2020, the District Court referred all pending and future motions to Magistrate Judge Andrew Austin. (ROA.1647.) Appellants did not seek leave to amend their complaint by the November 1, 2020, deadline, instead filing their Rule 26(b) disclosures and designations a month late on December 1, 2020. (ROA.1660-1666.)

---

[9] Collectively, this was the third time Infowars Appellees notified Appellants how their claims were defective.

[10] This was the fourth time Infowars Appellees notified Appellants how their claims were defective.

Appellants then waited over two months and, on February 12, 2021, served notices of deposition for Alex Jones and Owen Shroyer set for February 24 and 26, 2021, less than a week before the close of discovery. (ROA.1669-1672.) Infowars Appellees filed a motion for a protective order regarding these depositions on February 17, 2021, explaining that depositions were premature because the parties had not conferred as required by Fed. R. Civ. P. 26(f) and had not exchanged Rule 26(a) initial disclosures, the notices of deposition were defective, and discovery would be wasteful in light of the pending motions to dismiss. (ROA.1685-1691.) Roger Stone and David Jones also filed motions to stay discovery (ROA.1673-1680, 1693-1700), which Appellants opposed (ROA.1704-1705) and the District Court granted on March 26, 2021, finding that staying discovery would be in the interest of judicial efficiency given the existence of multiple meritorious motions to dismiss that had been fully briefed.[11] (ROA.1713-1714.) Appellants did not file an objection to this order under Fed. R. Civ. P. 72(a).

---

[11] This served as an additional indicator to the Appellants that their claims were defective, yet they persisted.

On May 25, 2021, Magistrate Judge Austin entered his Report and Recommendation on the parties' motions to dismiss, recommending that all motions be granted and that all Appellants' claims be dismissed with prejudice. (ROA.1995-2013.) Appellants filed a procedurally improper motion to vacate the Report and Recommendation on May 27, 2021 (ROA.2014-2024), which Infowars Appellees opposed on June 3, 2021 (ROA.2389-2397),[12] and to which Appellants filed their reply on June 7, 2021. (ROA.2401-2403.) Appellants then filed their objection to the Report and Recommendation on June 8, 2021 (ROA.2404-2428), and Infowars Appellees filed their response on June 22, 2021 (ROA.2502-2517).[13] The District Court then adopted the Report and Recommendation in full on June 25, 2021 (ROA.2534-2538) and entered final judgment in Appellees' favor the same day. (ROA.2539.)

Insistent on dragging this case out as long as possible, Appellants immediately filed their motion for reconsideration of the District Court's order of dismissal. (ROA.2540-2559.) Appellants argued that they should

---

[12] This was the fifth time Infowars Appellees notified Appellants how their claims were defective.

[13] This was the sixth time Infowars Appellees notified Appellants how their claims were defective.

have been granted leave to amend to include the allegations in their affidavits, despite never having previously moved for leave to amend and never arguing in their motion to dismiss briefing that they should be allowed to amend their complaint. (ROA.2541-2542.) Appellants also claimed Magistrate Judge Austin should not have stayed discovery, despite never having filed an objection to Judge Austin's order staying discovery. (ROA.2558.) Infowars Appellees filed their opposition to the motion for reconsideration on June 28, 2021. (ROA.2581-2586.)[14]

Following final judgment, Appellees filed motions for sanctions and attorneys' fees, and Appellants filed a motion to stay resolution of these motions until after all appeals had been exhausted. (ROA.3148-3149.) Appellants then, on August 5, 2021, filed a motion for leave to amend their complaint that was over 9 months late, attaching a proposed amended complaint that did nothing more than incorporate the contents of the attached to their motion to dismiss briefing. (ROA.3150-3256.) Infowars Appellees filed their opposition on August 11, 2021. (ROA.3296-3299.)

_____

[14] This was the seventh time Infowars Appellees notified Appellants how their claims were defective.

The District Court denied Appellants' motion for reconsideration on September 16, 2021. (ROA.3321-3322.) It then denied Appellants' motion for leave to amend and to stay resolution of the sanctions and fee motions on October 12, 2021, reasoning that the judgment entered before the motion for leave to amend was filed barred additional pleadings, and there was no reason to stay the fees and sanctions motions in light of reconsideration being denied. (ROA.3554-3557.) Appellants filed their notice of appeal the same day, purporting to appeal the District's Court's final judgment and orders adopting the Magistrate's Report and Recommendation, denying Appellants' motion for reconsideration, and denying Appellants' motion to stay and motion for leave to amend their complaint, "and all other rulings and orders adverse to Plaintiffs in this matter." (ROA.3558-3559.)

## SUMMARY OF THE ARGUMENT

Appellants' defamation claims are fatally defective because Infowars Appellees did not make most of the complained-of statements, none of the complained-of statements are actionable, and Appellants failed to make any non-conclusory factual allegations regarding actual malice on the part of the Infowars Appellees. Appellants also failed to provide pre-suit notice under the TDMA, requiring dismissal.

Appellants' Lanham Act claim is fatally defective because none of the complained-of statements were advertisements or referred to any goods or services. Appellants have only alleged an economic motivation, which is *per se* insufficient for speech to be commercial, and the Lanham Act only governs commercial speech.

The District Court properly denied Appellants' leave to amend their complaint a second time because their request to amend was several months late, they failed to raise the issue of amendment until after they had already lost the case, and their proposed amendment would have been futile. Further, they had ample opportunity to amend previously, but they waived their right to do so.

The Magistrate Judge properly stayed discovery because meritorious motions to dismiss were pending and no discovery would have affected the resolution of these motions. Appellants also waived all objections to the order staying discovery by not filing a timely motion under Fed. R. Civ. P. 72(a).

**ARGUMENT**

## 1.0   Standard of Review

A district court's grant of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is reviewed *de novo*. *Reece v. U.S. Bank Nat'l Ass'n*, 762 F.3d 422, 424 (5th Cir. 2014).

A district court's decision not to give leave to amend a complaint is reviewed for abuse of discretion. *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152 (5th Cir. 2010). If the decision to deny leave to amend is based solely on futility, then it reviewed *de novo* under the same standard as reviewing an order on a Rule 12(b)(6) motion. *Wilson v. Bruks-Klockner, Inc.*, 602 F.3d 363, 368 (5th Cir. 2010). An appellate court will not review a district court's refusal to grant leave to amend, however, when the plaintiff has not expressly requested leave. *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). An appellate court may affirm a district court's dismissal "on any grounds supported by the record." *Hosein v. Gonzales*, 452 F.3d 401, 403 (5th Cir. 2006).

## 2.0 The District Court Properly Dismissed Appellants' Claims

### 2.1 There is No Significant Conflict of Laws as to the Claims

This case was filed in D.C., transferred to Texas due to improper venue, asserting claims regarding speech that occurred in Texas and Florida regarding individuals from Florida and New Jersey. "The choice-of-law rules of the transferee state apply if a diversity suit was transferred from a district court that had no personal jurisdiction over the defendant or where venue was otherwise improper." *Nat'l Union Fire Ins. Co. v. Am. Eurocopter Corp.*, 692 F.3d 405, 408 n.3 (5th Cir. 2012). Texas choice of law rules, therefore, apply. Federal courts in diversity cases apply the choice of law rules of the forum state. *Casa Orlando Apts., Ltd. v. Fannie Mae*, 624 F.3d 185, 190 (5th Cir. 2010). Texas uses the "most significant relationship" test in the Restatement (Second) of Conflict of Laws ("Restatement"), which is applied issue by issue. *Id.* at 190-91. In a tort case, the primary factors for choice of law are: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where

the relationship, if any, between the parties is centered." *Id.* (citing Restatement (Second) of Conflict of Laws § 145).

"As the Restatement commentary notes, the place of injury will not play an important role in a choice of law analysis in the case of multistate defamation." *Chevalier v. Animal Rehab. Ctr.*, 839 F. Supp. 1224, 1229 (N.D. Tex. 1993) citing Restatement § 154 cmt. e. The alleged statements were made primarily in Texas and Florida and are alleged to have been broadcast from Texas. The relationship among the parties is centered on Texas—in fact, Appellants bring joint claims in their FAC, not accounting for Corsi and Klayman being from New Jersey and Florida, essentially asserting that a single law governs the claims brought by both. The only commonality between them is Texas.

However, this analysis need not be generally undertaken. "[F]or a court to conduct a choice of law analysis, it must be presented with a true conflict of laws. A 'true conflict' arises when the law of two or more forums conflicts in such a way that the difference has a significant effect upon the outcome of the case." *Arrowood Indem. Co. v. Gulf Underwriters Ins. Co.*, No. EP-08-CV-285-DB, 2010 U.S. Dist. LEXIS 152771, at *9 (W.D. Tex. Mar. 3, 2010) (internal citation omitted). Further, any choice of law

analysis must be done on an issue-by-issue basis. *See Toyota Motor Co. v. Cook*, 581 S.W.3d 278, 284 (Tex. App. 2019); *see also Palomo v. United States,* No. 1:96cv329GR, 1997 U.S. Dist. LEXIS 24103, at *6 (S.D. Miss. Mar. 14, 1997) ("Texas law also utilizes dépeçage, an issue by issue analysis in choice of law decisions.").

The District Court applied Texas law in deciding the parties' motions to dismiss and Appellants never contested that Texas law applies to their claims. There is no significant conflict of laws and Texas law applies.

## 2.2   Appellants Failed to Plead a Claim for Defamation

Appellants' first three causes of action sound in defamation. "Under Texas law a defamation cause of action requires the plaintiff to prove: (1) the defendant published a false statement; (2) defamatory to the plaintiff, in that it damaged the plaintiff's reputation, exposing him to financial injury; and (3) the defendant made the statement (at least) negligently as to its truth. *Green v. CBS Inc.*, 286 F.3d 281, 283 (5th Cir. 2002); *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989)." *Ross v. Abbott*, No. 1:12-CA-540-LY, 2013 U.S. Dist. LEXIS 203997, at *21 (W.D. Tex. July 19, 2013)

(Yeakel, J.). New Jersey and Florida law do not present a true conflict. *See DeAngelis v. Hill,* 180 N.J. 1, 847 A.2d 1261, 1267-68 (N.J. 2004) (citing Restatement (Second) of Torts § 558 (1977)) and *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). Appellants cannot meet these elements.

As a preliminary matter, Appellants' argument relies extensively on allegations contained in their declarations, which they attached for the first time in their oppositions to the parties' motions to dismiss. These declarations are extrinsic evidence which cannot be considered on a Rule 12(b)(6) motion to dismiss. Such a motion may be converted to a motion for summary judgment when "matters outside the pleadings are presented and not excluded by the court," but Appellants made no such request and the District Court did not consider such evidence. Fed. R. Civ. P. 12(d). This Court should not consider this extrinsic evidence in deciding this appeal, other than perhaps to determine that allowing Appellants to file their proposed second amended complaint would have been futile.

### 2.2.1 Infowars Appellees' Statements are Not Actionable

The statements at issue are generally neither false nor defamatory, whether viewed directly or by implication.[15] "[D]efamatory statements must be false in order to be actionable." *Cain v. Hearst Corp.*, 878 S.W.2d 577, 580 (Tex. 1994). "Truth is a complete defense to defamation." *Randall's Food Mkts. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). "A statement need not be perfectly true; as long as it is substantially true, it is not false." *KBMT Operating Co., LLC v. Toledo*, 492 S.W.3d 710, 714 (Tex. 2016). The words must be "reasonably susceptible of a defamatory meaning" and "verifiably false and not merely an opinion masquerading as a verifiable fact." *Castleman v. Internet Money Ltd.*, No. 07- 16-00320-CV, 2018 Tex. App. LEXIS 8559, at *8 (Tex. App. Oct. 18, 2018).

---

[15] "In a defamation-by-implication case, the defamatory meaning arises from the statement's text, but it does so implicitly." *Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 627 (Tex. 2018). It requires "extrinsic evidence" to show that the "gist" of the story is wrong, where material facts are omitted or facts are juxtaposed in a misleading way to "create a substantially false and defamatory impression." *Id.* at 627-628 (internal citation omitted). Appellants fail to plead any omission or juxtaposition as to truthfully stated facts that give a false impression. Infowars Appellees further note that there do not appear to be any cases recognizing defamation by implication as a theory under New Jersey law.

Rhetorical hyperbole is not objectively verifiable and, therefore, does not constitute actionable defamation. *See Coronado v. Freedom Communs., Inc.*, No. 13-13-00525-CV, 2015 Tex. App. LEXIS 10128, at *6-7 (Tex. App. Sept. 30, 2015). "[W]hether the publication is a protected expression of opinion or an actionable statement of fact is a question of law for the court." *Carr v. Brasher*, 776 S.W.2d 567, 570 (Tex. 1989).

Context is also important in determining whether a listener will view a statement as one of fact, as opposed to opinion or rhetorical hyperbole. "[E]ven when a statement *is* verifiable as false, it does not give rise to liability if the 'entire context in which it was made' discloses that it is merely an opinion masquerading as fact." *Dallas Morning News, Inc. v. Tatum*, 554 S.W.2d 614, 639 (Tex. 2018) (quoting *Bentley v. Bunton*, 94 S.W.3d 561, 581 (Tex. 2002). Federal courts have found that listeners likely view statements made on bombastic radio commentary shows as expressions of opinion or hyperbole, not factual representations. The Ninth Circuit in *Gardner v. Martino*, 563 F.3d 981, 988-89 (9th Cir. 2009) found that statements made on a radio "shock jock" program were not statements of fact, noting that the show "contains many of the elements that would reduce the audience's expectation of learning an objective fact:

drama, hyperbolic language, an opinionated and arrogant host, and heated controversy."

This analysis is apparently particularly so in the political context. The Southern District of New York in *McDougal v. Fox News Network, LLC*, 489 F. Supp 3d 174 (S.D.N.Y. 2020) found that, when viewed in context of Fox News's "The Tucker Carlson Show," Carlson's claim that plaintiff was an extortionist was a protected expression of opinion and rhetorical hyperbole. The court noted that statements are especially likely to be viewed as rhetorical hyperbole "in the context of commentary talk shows like the one at issue here, which often use 'increasingly barbed' language to address issues in the news." *Id*. at 182-83. It also noted that Carlson had a reputation for partisan, non-literal commentary, and thus "any reasonable viewer 'arrive[s] with an appropriate amount of skepticism about the statements he makes. Whether the Court frames Mr. Carlson's statements as 'exaggeration,' 'non-literal commentary,' or simply bloviating for his audience, the conclusion remains the same – the statements are not actionable." *Id*. at 183-84 (quoting *600 W. 115th Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 141, 603 N.E.2d 930, 936 (1992)). This is a bipartisan analysis; the Ninth

Circuit came to the same conclusion regarding Rachel Maddow. *See Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1160 (9th Cir. 2021) (finding that "[i]n comparison to the undisputed facts that Maddow reports, the contested statement was particularly emphatic and unfounded: Maddow went from stating that OAN employs a Sputnik employee to stating that OAN reports Russian propaganda. A reasonable person would understand Maddow's contested statement as an 'obvious exaggeration . . . .'").

Appellants allege that Alex Jones "is a well-known extreme fabricator of false stories and conspiracies, who has been sued numerous times for alleged defamation. He is [a] media personality who creates frequently false and defamatory content ...." (ROA.769, ¶7.)[16] He also claims the Infowars Appellees "have a long and sordid history of publishing and broadcasting defamatory material," and claims they are well-known for allegedly propagating conspiracy theories. (ROA.772-773, ¶¶17- 21.) Accepted at face value, Appellants thus allege that Infowars

_____

[16] Infowars Appellees deny that these allegations of fabricating statements are accurate, but Appellants' own allegations establish that they have an alleged reputation for bending the truth.

Appellees are not reliable sources of factual information, and are widely known not to be reliable sources of much further than hyperbole and commentary. This places them in a category equal to a radio shock jock or Tucker Carlson, meaning Infowars Appellees' audiences are less likely to view statements made on their radio programs as factual.

Appellants' argument that Infowars Appellees' statements are actionable relies on *Bentley v. Bunton*, 94 S.W.3d 561, 583-84 (Tex. 2002), where the Texas Supreme Court held that merely disclaiming a statement as one of opinion did not absolve someone of liability in defamation. But, Appellants ignore that Texas courts, in deciding whether a statement is one of opinion, must "consider the entire context of the article or column, including cautionary language." *Yiamouyiannis v. Thompson*, 764 S.W.3d 338, 341 (Tex. App.—San Antonio 1988, writ denied). Context matters, as it does in any defamation case. Just as Klayman could not meet his burden in *Klayman v. Segal,* 783 A.2d 607

(D.C. 2001),[17] Appellants cannot do so here. None of the statements at issue, whether uttered by Stone or Infowars Appellees, are actionable.

### 2.2.1.1 Statements Concerning Corsi

As to the statements by Jones in the October 26, 2018, video about Corsi,[18] these are all substantially true, non-defamatory, and/or statements, in their context, of opinion or rhetorical hyperbole.

1) "when I was in DC about six months ago with dr. [sic] Corsi he **seemed to** mentally be extremely degraded to the point of what I would call dementia." (ROA.779, ¶¶42-44, ROA.227-231.) Although Corsi refers

---

[17] In this case, Klayman sued *The Washington Post* for defamation based on an article that recounted his incessant public relations efforts to boost his profile and that of Judicial Watch, including quoting a former employee who said that "[i]f there was a school shooting [Klayman would] say, 'So what? We're doing important things here.'" *Id.* at 619. The court found that, when viewed in context, a reasonable person would not read this statement to mean that Klayman did not care about the victims of school shootings, but rather to mean that Klayman believed a school shooting tragedy should not interfere with public relations work for Judicial Watch. *Id.*

[18] Corsi's claims arise from the video at the URL cited at footnote 9 of the FAC. A copy of the closed captions embedded in that video at that URL appears at ROA.226-247. In deciding a motion to dismiss "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000); *see also* Fed. R. Civ. P. 10(c).

to this statement as "false," he does not assert a particular falsehood. He does not assert it is factually false that Jones observed Corsi at that time and place. The remainder is Jones's opinion based on his observation, *i.e.*, what it "**seemed.**" *Accord Thompson*, 764 S.W.2d at 341 ("In distinguishing between fact and opinion, the court should ... (3) consider the entire context of the article or column, including cautionary language[.]") This statement does not assert that Corsi has dementia. Instead, it recounts Jones's personal observations and opinions of an event that Corsi does not dispute occurred. There is no allegation that the factual premises of Jones's statements are false, and he is clearly offering his opinion as to how Corsi appeared *to him* on a specific date. But even if this statement could be construed as a factual assertion, it still cannot give rise to a viable claim as there is no non-conclusory allegation that Infowars Appellees knew this statement was false or had significant subjective doubts as to its truth or falsity.

2) "[Corsi]'s on the ground at another table we had to help him out of there man they thought he was dead in the elevator." (ROA.779, ¶¶42-44, ROA.227-231.) Whether or not third parties thought Corsi was dead, which Jones discloses was based on them "listening to his chest," is

merely a report of their opinions. Neither is there any defamatory meaning in a statement about whether Corsi may have passed out. There is no allegation in the FAC that any aspect of this statement is false. There is no allegation that Corsi was not at a steakhouse. There is no allegation that Jones did not see Corsi at this steakhouse. There is no allegation as to the subjective beliefs or stated concerns of any security staff. Appellants having failed even to make a conclusory allegation that this statement is false in the FAC, it was proper for the District Court to find this statement non-actionable.

3) "[Corsi] had a stroke or whatever's going on with Corsi that whatever comes out of his mouth ain't the truth." (ROA.779, ¶¶42-44, ROA.227-231.) In a context-free analysis, these could sound like statements of fact. However, in context Jones had earlier said "*I think he's got dementia or a stroke I mean I don't know*," describing him as having had "*a really sharp brain until about a year ago*," and then relaying his grandfather's mental demise following a heart attack. (ROA.227-231.) Thus, Jones did not call Corsi an intentional liar, but rather stated that Jones believes Corsi said things in error based on his lay observations of Corsi's seeming health conditions. When "the bases

for the ... conclusion are fully disclosed, no reasonable reader would consider the term anything but the opinion of the author drawn from the circumstances related." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1093 (4th Cir. 1993). "Viewing the challenged statements as a whole and in context," the Court should "conclude that a person of ordinary intelligence would perceive these words as nothing more than rhetorical hyperbole." *Rehak Creative Servs. v. Witt*, 404 S.W.3d 716, 729 (Tex. App. 2013). The reasonable listener would interpret this expression as an "expression of outrage." *Schnare v. Ziessow*, 104 F. App'x 847, 852 (4th Cir. 2004) citing *Horsley v. Rivera*, 292 F.3d 695, 701-02 (11th Cir. 2002).

Appellants argue that this context only compounds the falsity of this statement, but there is no legal support for this argument. Jones provided his opinion that, from his personal observations as a layperson, Corsi must be suffering from some condition based on his disclosed observation that Corsi had "a really sharp brain about a year ago" and drawing a comparison with a family member who suffered a similar mental decline after a health emergency. As with his prior statements, Jones is providing clear speculation based on his personal observations of Corsi's mental acuity, with clear signals that this is speculation and

opinion – something he has a First Amendment right to express. No reasonable person would see this statement as a statement of fact, but rather as an opinion based on disclosed facts. This is not actionable.

4) Similarly, in the January 21, 2019, video,[19] Jones is accused of calling Corsi a "spook, back and forth with different agencies." (ROA.784, ¶67.) There is nothing defamatory about working with the intelligence community. On the contrary – most reasonable people would find such facts to be flattering.[20] *See Phillips v. Washington Magazine, Inc.*, 58 Md. App. 30, 37 (1984) (holding that an article stating that plaintiff was the chief of a CIA task force "involved with the Chilean Brass who opposed Allende" was not defamatory). Moreover, in context, Jones was reporting on what FBI agents and others had relayed to him. (ROA.293-294.) And while it would be improper to consider Corsi's declaration, *he admits the truth of this statement* in his declaration. (ROA.1364-1366, ¶¶7, 15.)

_____

[19] Corsi's claims arise from the video at the URL cited in footnote 13 of the FAC. A copy of the first 53 minutes of the closed captions embedded in that video at that URL appears at ROA.248-304.

[20] As Magistrate Judge Austin noted, "a 'spook' is a colloquial term for a person employed in the intelligence community, and is generally not taken as a derogatory term. It is akin to referring to a police officer as a 'cop.'" (ROA.2007.)

Appellants assert that Jones's statement is defamatory because it is "advanc[ing] the false notion that Dr. Corsi was cooperating with Special Counsel Mueller to try to take down Stone, and by extension, President Trump." (Initial Brief at ECF p.30.)[21] But, these are wild extrapolations that are fabricated entirely out of the mind of the author of the brief – they are found nowhere in the allegedly defamatory statements, and no reasonable person would re-interpret the words in the statement to take on this meaning. There is only an allegation that it was false to claim Corsi was a "spook." This is not actionable.

5) Regarding the allegations Jones accused Corsi of "not being able to walk," what he *actually* said was that Corsi is "*super smart unless you catch him when he can't walk*." (Compare ROA.784, ¶68 with ROA.293-294.) Expressing an opinion as to when someone might not seem terribly smart is not actionable defamation. Corsi claims that this statement creates "the false and defamatory implication that he is an alcoholic." (Initial Brief at ECF p.30.) Again, Appellants take a statement, project

_____

[21] Appellants only argue that this alleged implication is defamatory. They do not argue it is defamatory to claim that Corsi worked with intelligence agencies.

their imagination into a fanciful interpretation of the statement with which no reasonable reader would concur, and then seek a financial windfall for their own fictional take on the statement. What Jones actually said is not remotely actionable. Furthermore, there are no factual allegations that support Appellants' claim of an implication of alcoholism, as Jones's statement, whether in full or as recounted in the FAC, makes no reference at all to alcohol. This statement is not actionable.

The FAC contains other allegedly defamatory statements Stone made concerning Corsi. Appellants' Initial Brief does not address them, however, and so it appears they do not challenge the District Court's dismissal of claims premised on these statements.

### 2.2.1.2  Statements Concerning Klayman

Klayman's defamation claims against Infowars Appellees fail at the outset because these parties did not actually say anything about Klayman. All the alleged statements by Infowars Appellees were of and concerning Corsi, exclusively. For the sake of thoroughness, however, they will discuss the allegedly actionable statements about Klayman spoken by Stone in the unlikely event the Court gives credence to

Klayman's novel theory of all Appellees acting "in concert" – a claim that was summarily thrown out in a nearly identical case in Florida. (ROA.1013, ¶1, *Corsi v. Stone*, No. 2019CA013711AXX (Palm Beach Cty., Fla., Aug. 12, 2020).)

Stone's statements about Klayman are primarily statements of opinion and rhetorical hyperbole as to his competence. Appellants do not address most of these statements (such as calling Klayman "garbage") at all, and so it appears Appellants do not challenge dismissal of their defamation claims regarding these statements. The statements are otherwise true or substantially true. Klayman's in-court arguments have been deemed "patently inadequate." *Klayman v. Judicial Watch, Inc.*, 802 F. Supp. 2d 137, 148 (D.D.C. 2011). It was also observed that "[d]espite having more than ample opportunity to do so, Klayman has utterly failed to discharge his obligations in the course of pretrial proceedings." *Id*. at 149. Accordingly, while Klayman may find such negative opinions of him to be unflattering, they are opinions with which at least one court has agreed.

As to the separation from Judicial Watch in paragraph 56 of the FAC, such was relaying assertions about which Klayman has already lost

and should be estopped from suing over. *See Klayman v. Judicial Watch, inc.*, 247 F.R.D. 10, 12-13 (D.D.C. 2007). That case makes it abundantly clear that (1) Judicial Watch learned of allegations against Klayman that he had an inappropriate relationship with an employee and physically assaulted his wife; (2) Judicial Watch asked Klayman to resign based on these allegations; and (3) Klayman offered to resign so as to avoid an internal investigation, resulting in a severance agreement. (*Id.*) Claiming Klayman was "ousted" due to a "sexual harassment complaint" is absolutely a fair characterization of these court documents. Klayman additionally cites the transcript of a deposition of Tom Fitton, the President of Judicial Watch, who claims that Klayman was not "ousted as a result of a sexual harassment complaint." (Initial Brief, ECF p.23, ROA.1331.) The District Court properly declined to consider this extrinsic evidence, but even if it were proper to, the evidence does not bear on the question of actual malice, or even negligence. The deposition was conducted on June 6, 2019, while all the statements at issue were uttered in October 2018 and January 2019. Stone and Infowars Appellees could not have been aware of this deposition testimony when Stone made

his statements (since this testimony did not then-exist), meaning there is nothing to suggest they acted with actual malice.

The only other statement regarding Klayman, that he has "never actually won a courtroom victory in his life," is not actionable as obvious exaggeration and hyperbole. No reasonable person would interpret this as a representation that Klayman has literally never, in his entire career, had a single win. It is a hyperbolic statement made as part of Stone expressing his opinion that Klayman is a bad attorney. The same goes for Stone's statement that Klayman only has an IQ of 70. "[C]ourts have held that statements calling the plaintiff 'stupid,' a 'moron,' and a 'nincompoop' were not actionable." *Steinhausen v. Homeservices of Neb., Inc.*, 289 Neb. 927, 942 (2015) (collecting cases). Klayman may not like having his intelligence questioned, but it is not actionable.

### 2.2.2 Appellants Failed to Plausibly Allege Actual Malice

Appellants are public figures, whether they be deemed general public figures "for all purposes and in all contexts" or limited-purpose public figures who "voluntarily injects himself or is drawn into a particular public controversy and therefore becomes ... a public figure for

a limited range of issues." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974).

Based on the facts laid out in Section 1.0 of the Statement of the Case, Appellants are general public figures or, at a minimum, a limited purpose public figures. Corsi claims to be a best-selling author and political commentator, and he voluntarily injected himself into the highly-publicized prosecution of Roger Stone. Similarly, multiple courts have found Klayman to be a public figure. However, even without this issue estoppel, Klayman claims to be a best-selling author and he injected himself into the Roger Stone prosecution by representing Corsi. Appellants did not contest the District Court's finding that they are public figures and their Initial Brief does not challenged that finding.

A public figure defamation plaintiff must "sufficiently allege[] actual malice in order to state a defamation claim." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 744 (5th Cir. 2019). "A statement is made with 'actual malice' when it is made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *O'Hair v. Skolrood*, Civil Action No. A-89-CA-769, 1990 U.S. Dist. LEXIS 14928, at

*7-8 (W.D. Tex. May 4, 1990) quoting *New York Times v. Sullivan*, 376

U.S. 254, 280 (1964)). Notably,

> "Proving actual malice is a heavy burden. ... Proof that a defendant spoke out of dislike, or with ill will towards another, also does not automatically meet the test of actual malice, even if his statements are shown to be false. *Garrison v. Louisiana*, 379 U.S. 64, 73 (1964). ... That a defendant publishes statements anticipating financial gain likewise fails to prove actual malice: a profit motive does not strip communications of constitutional protections. *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989). As long as a defendant does not act knowing his statement is false or with reckless disregard of its truth, actual malice will not be present. ...

> "A 'reckless disregard' for the truth, however, requires more than a departure from reasonably prudent conduct." *Harte-Hanks*, 491 U.S. at 688. The standard for reckless disregard "is a subjective one--there must be sufficient evidence to permit the conclusion that the defendant actually had a 'high degree of awareness of ... probable falsity'." *Harte-Hanks*, 491 U.S. at 688 (quoting *Garrison*, 379 U.S. at 74, 85 S. Ct. at 215-16). ...

> In short, "the actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term." *Harte-Hanks*, 491 U.S. at 666, 109 S. Ct. at 2685. Culpability on the part of the defendant is essential. "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant [v. Thompson,* 390 U.S. 727, 731 (1968)]."

*Peter Scalamandre & Sons v. Kaufman*, 113 F.3d 556, 561 (5th Cir. 1997).

Appellants cannot simply say "the defendant knew it was false, thus there was actual malice" to satisfy pleading requirements; they must set forth facts that show the defendant had a reason to know the statement was false, and such factual allegations must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Further, they must be alleged in a manner that would make it plausible that actual malice could be shown by clear and convincing evidence. A public figure must show by clear and convincing evidence that the defendants made the defamatory statements knowing they were false, or with reckless disregard of whether they were false or not. *New York Times Co. v. Sullivan*, 376 U.S. 254(1964); *Bose Corp. v. Consumers Union*, 466 U.S. 485, 511 (1984).

At most, Appellants assert that Infowars Appellees used to work with them, but that does not support an allegation (or even an inference) of knowing falsehood necessary to support a conclusion of actual malice. Working with someone does not automatically impart knowledge of everything about a coworker.

There are no plausible allegations that Infowars Appellees acted with actual malice in merely having Stone as an interviewee on their

programs, rendering them responsible for any of his statements. As to Alex Jones's own statements, they were based on his perceptions of Corsi and what others reported to him. There is no basis to allege that he acted in reckless disregard of the truth. Thus, dismissal of the defamation claims was proper.

Appellants claim they provide "conclusive evidence" that Infowars Appellees acted with actual malice because "Dr. Corsi's book, *Killing the Deep State,'* was at all material times, still available for sale on the Infowars website!" (Initial Brief at ECF p.22.) First, this allegation appears nowhere in the FAC, and the extrinsic exhibit cited in support of this claim makes no mention of this book still being sold on the Infowars website. It is the unsupported factual assertion of an attorney and should be ignored. Second, this is a non-sequitur; a book-seller may decide a book is sufficient to continue selling it even if the seller has a dim view of the author. Amazon continued selling the book "The Everything Store" even after MacKenzie Bezos left a one-star review.[23]  Finally, the mere

---

[23] *See* Burlingame, Chris, "Let's remember when Mackenzie [sic] Bezos negatively reviewed a book critical of Amazon, on Amazon, on this day in 2013", MEDIUM (Nov. 4, 2019) available at

existence of a book in an online store does not impute both knowledge of its contents on the part of someone affiliated with that store *and* an acceptance of its contents as true by someone affiliated with that store. By that metric, Jeff Bezos would be charged with actual knowledge of the content of every single book for sale on Amazon.com. This is not consistent with any case law in the history of the American legal system. To the contrary, the Supreme Court has rejected an omniscience requirement. *See Smith v. California*, 361 U.S. 147, 153 (1959) ("Every bookseller would be placed under an obligation to make himself aware of the contents of every book in his shop. It would be altogether unreasonable to demand so near an approach to omniscience") (quoting 9 *The King v. Ewart*, 25 N. Z. L. R. 709, 729 (C. A.)).

As for Appellants' assertions regarding Klayman's departure from Judicial Watch, this actual malice claim has some fatal problems. First, Stone made the statements at issue, not the Infowars Appellees, and the Infowars Appellees are not liable for Stone's statements. Second, even if

_____

<https://medium.com/journal-of-precipitation/lets-remember-when-mackenzie-bezos-negatively-reviewed-a-book-critical-of-amazon-on-amazon-on-1f4083fa2c07>.

Appellants had properly alleged a conspiracy, they must also allege that Infowars Appellees themselves possessed actual malice for each statement at issue. Yet, Appellants do not identify a single allegation, factual or otherwise, that Infowars Appellees (or even Stone) had any awareness of the falsity of Stone's statements regarding Judicial Watch.

Appellants also quote extensively from Klayman's declaration to show actual malice regarding statements as to his abilities as a lawyer. As mentioned in Section 2.2, *supra*, his declaration was properly ignored in deciding the parties' Rule 12(b)(6) motions. But, even if it were considered, his declaration refers exclusively to Stone's awareness of Klayman's capabilities, not the Infowars Appellees' awareness. Appellants thus failed to plausibly allege actual malice as to Infowars Appellees.

### 2.2.3 Appellants Failed to Comply with the TDMA

Aside from being meritless, Appellants' defamation claims were dead on filing for failure to comply with the pre-suit notification provisions of the Texas Defamation Mitigation Act ("TDMA"). The TDMA:

> provides that "[a] person may maintain an action for defamation only if ... the person has made a timely and

> sufficient request for correction, clarification, or retraction from the defendant." [Tex. Civ. Prac. & Rem. Code §] 73.055(a). If a plaintiff does not make such a request before the statute of limitations expires, she may not state a claim for defamation. *See id.* at § 73.055(b).

*Tubbs v. Nicol*, 675 F. App'x 437, 439 (5th Cir. 2017). The statute of limitations for defamation in Texas is a year. Tex. Civ. Prac. & Rem. Code § 16.002. It had been over a year since the alleged statements were made, and there was no valid request for correction, clarification, or retraction. Though Appellants claimed to have sent pre-suit notice via email in January 2019 (ROA.1375), this email did not identify any allegedly defamatory statement, instead telling the recipients "that any further defamation about Dr. Corsi and the undersigned will result in immediate legal action." (*Id.*) This alleged notice does not satisfy the TDMA, and Appellants' state-law claims must be dismissed.

This is not a case where Appellants can dismiss, send a TDMA request, and re-file. "The Fifth Circuit has held that Texas applies its own statute of limitations, regardless [of] what substantive law applies." *Woolley v. Clifford Chance Rogers & Wells, L.L.P.*, 2004 U.S. Dist. LEXIS 97, 2004 WL 57215, at *3 (N.D. Tex. Jan. 5, 2004) (citations omitted). Texas has a one-year statute of limitations for defamation claims. *See*

Tex. Civ. Prac. & Rem. Code § 16.002(a). It applies to all of the common law claims, as this "one-year limitation likewise applies to other causes of action for which the gravamen of the complaint is injury to a plaintiff's reputation because of allegedly defamatory statements." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 741-42 (5th Cir. 2019) (citations omitted). The claims accrue on the "first date of publication," even on the internet. *See id.* at 742 (citations omitted).

The New Jersey iteration, N.J. Stat. § 2A:43-2, and comparable Florida statute, Fla. Stat. § 770.01, with which Appellants similarly failed to comply, restricts damages to those "specially alleged in the complaint." Appellants plead no special damages and, thus, there are no damages recoverable. "For procedural matters, ... Texas, generally speaking, applies the law of the forum state." *Porter v. Charter Med. Corp.*, 957 F. Supp. 1427, 1432 n.2 (N.D. Tex.1997) (collecting cases). The

Texas statute is a "procedure."[24] *Butowsky v. Folkenflik*, Civil Action No. 4:18CV442, 2019 U.S. Dist. LEXIS 104297, at *132-33 (E.D. Tex. Apr. 17, 2019); *Hearst Newspapers, LLC v. Status Lounge, Inc.*, 541 S.W.3d 881, 891 (Tex. App. 2017).

## 2.3   Appellants Failed to Plead an Intentional Infliction of Emotional Distress or Assault Claim

Appellants' initial Complaint and FAC both allege causes of action for intentional infliction of emotional distress and assault (of all things) against Infowars Appellees. However, Appellants' Initial Brief makes no mention of these causes of action. Appellants have, therefore, waived appeal of the dismissal of these claims with prejudice. *See Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 260 n.9 (5th Cir. 1995) ("the

---

[24] It is, however, sufficiently substantive for *Erie* purposes to apply in diversity cases, as other pre-suit notice requirements are enforceable. *See Baber v. Edman,* 719 F.2d 122, 123 (5th Cir. 1983) (finding Texas pre-suit notice in medical malpractice cases to apply in diversity actions); *Davis v. Allstate Fire & Cas. Ins. Co.*, Civil Action No. 4:18-CV-00075, 2018 U.S. Dist. LEXIS 109574, at *5-7 (E.D. Tex. June 29, 2018) (same regarding Texas Deceptive Trade Practice Act requirement and collecting cases). This Court has applied the TDMA pre-suit notice requirement. *Tubbs v. Nicol*, 675 F. App'x 437, 439 (5th Cir. 2017).

failure to provide any legal or factual analysis of an issue results in waiver of that issue").

The claims otherwise lack merit. As noted by the Magistrate Judge, "[w]ith the exception of a vague comparison of Defendant Stone to the 'Mafia,' the Complaint provides no specific allegations that the Defendants threatened Corsi or Klayman with imminent bodily injury." (ROA.2010) (recommending dismissal of the assault claim.) And the IIED claim is merely incidental; the gravamen of the claim is defamation, warranting dismissal. (ROA.2537.) Thus, this Court should affirm dismissal of these claims.

## 2.4 Appellants Failed to Plausibly Plead a Lanham Act Claim

The Lanham Act is concerned solely with commercial speech. *Alliance for Good Government v. Coalition for Better Government*, 901 F.3d 498, 506 n.8 (5th Cir. 2018) (noting 15 U.S.C. §1125(a) applies only to "commercial advertising and promotion"); *Nichols v. Club for Growth Action*, 235 F. Supp. 3d 289, 295 (D.D.C. 2017) (finding that "[t]he Lanham Act only restricts commercial speech, or speech connected with a good or service"). Accordingly, to have standing to bring a claim under

the Lanham Act, "the Plaintiff's injuries must fall within the 'zone of interests' the statute was intended to protect." *Lexmark Int'l v. Static Control Comps.*, 572 U.S. 118, 130 (2014). Mere competition "in the marketplace of ideas is not sufficient to invoke the Lanham Act." *Farah v. Esquire Magazine*, 736 F.3d 528, 541 (D.C. Cir. 2013).

Infowars Appellees' statements and conduct at issue in the FAC were political commentary and expression of opinion. They do not induce a listener to enter into a transaction with them. There is not so much as an allegation in the FAC of how any of these statements proposed or even related to a commercial transaction. Even under Appellants' theory, mere negative reporting on a competitor does not give rise to Lanham Act liability. To hold otherwise would mean that any ABC, CBS, or Fox News story about the allegations against CNN President Jeff Zucker are commercial speech under the Lanham Act.

The sole argument Appellants provide for the speech at issue being commercial is an alleged economic motivation. (Initial Brief at ECF p.41.) As a matter of law, this is insufficient to demonstrate commercial speech. In *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60 (1983), the Supreme Court found that informational pamphlets were commercial speech

where they were admitted to be advertisements, they referred to specific products, *and* the defendant had an economic motivation for distributing them. The Court was very clear that it was only the confluence of *all* of these factors that made the pamphlets commercial, and that any one of these factors would not, by itself, make them commercial. *Id*. at 66-67 (noting that "the fact that Youngs has an economic motivation for mailing the pamphlets would clearly be insufficient by itself to turn the materials into commercial speech").

The Eleventh Circuit in *Tobinick v. Novella*, 848 F.3d 935, 952 (11th Cir. 2017) explicitly found that an economic motivation is not dispositive on the commercial speech issue, otherwise "'all aspects of [a newspaper's] operations – from the selection of news stories to the choice of editorial position – would be subject to regulation if it could be established that they were conducted with a view toward increased sales. Such a basis for regulation clearly would be incompatible with the First Amendment.'" (quoting *Pittsburgh Press Co. v. Pittsburgh Com. on Human Relations*, 413 U.S. 376, 385 (1973)). Despite being informed of this deficiency over and over again, Plaintiffs have still done nothing to show that Defendants' speech was commercial. The court below, like the Southern

District of Florida, correctly found that Plaintiffs lacked standing to bring a Lanham Act claim.[25]

Infowars Appellees do not concede that their statements are advertisements, and make no argument as to how any statement at issue constitutes an "advertisement." The statements at issue plainly make no reference to any specific goods or services. With no allegations in the FAC regarding two of the three requirements for a finding of commercial speech, the Lanham Act is not implicated by Infowars Appellees' alleged statements.

Appellants cite *Procter & Gamble Co. v. Haugen*, 222 F.3d 1262 (10th Cir. 2000) to claim that the speech found commercial there is comparable to Infowars Appellees' speech here. But, as the Tenth Circuit found, in the language Appellants themselves cite, the speech at issue:

> unambiguously urges recipients to eschew purchasing P&G products in favor of Amway products. While economic motivation or references to a specific brand name and products, when viewed in isolation, might not render a message commercial speech, we conclude that those factors

_____

[25] It is worth noting that this theory was so outlandish that the *Novella* court sanctioned the plaintiff in that case $223,598.75 for the Lanham Act claims alone, and the Eleventh Circuit affirmed. *Tobinick v. Novella*, 207 F. Supp. 3d 1332, 1343 (S.D. Fla. 2016), aff'd, 884 F.3d 1110 (11th Cir. 2018).

> taken together with the instant message's promotion of Amway
> products at the expense of P&G products support the
> characterization of the subject message as commercial speech.

*Id.* at 1275 (emphasis added). The FAC fails to identify any actionable statements that serve as a promotion of Infowars Appellees' goods or an encouragement to viewers to "eschew" Appellants' goods or services. Infowars Appellees' and Stone's statements are no more than expressions of opinion or garden-variety hyperbole. Infowars Appellees did not urge viewers to purchase anything, there is no mention of any of Appellants' goods or services, and there is no promotion of Infowars Appellees' goods or services. Appellants' theory of commercial speech relies exclusively on an alleged economic motive which *cannot*, by itself, make speech commercial.

Appellants then move on to *Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109 (8th Cir. 1999) to make the same argument. But, they overlook that the speech at issue in *Pall* referred to specific goods sold by the plaintiff (breathing circuit filters) and made specific claims that these products were prone to failure under specific circumstances. *Id.* at 1114. Indeed, the Eighth Circuit found that the speech satisfied all three requirements of *Bolger*: (1) it was an advertisement because it proposed

a commercial transaction; (2) it specifically told readers to purchase a specific product of defendant's instead of a specific product of the plaintiff's and referred to the products by name; and (3) the defendant had commercial motivations. *Id*. at 1120-21. Again, it is the combination of *all three* characteristics in *Bolger* that make speech commercial, but Appellants only allege one such characteristic. The mere fact that Infowars Appellees derive revenue from their broadcasting programs does not make every word uttered on such programs commercial speech. *See Novella*, 848 F.3d at 942 (11th Cir. 2017).

### 2.5 Infowars Appellees Did Not Act in Concert With any Other Party

Appellants' legal theories rest on the claim that Appellees all acted in concert with one another and that everyone is responsible for everything Stone said. Appellants are wrong. The bare assertion that Appellees acted "in concert" is a conclusory statement that is simply insufficient to factually allege conspiracy liability. "Bald allegations that a conspiracy existed are insufficient." *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987). "Under Texas law, a civil conspiracy requires (1) two or more persons; (2) an object to be accomplished; (3) a

meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 719-20 (Tex. 1995). (*See also* ROA.1481-1484.)

Appellants claim that their bald assertions are detailed factual allegations. They are not. At most, Appellants allege that Alex Jones, Owen Shroyer, and David Jones are employees or agents of Infowars and FSS and that Roger Stone appeared on Infowars Appellees' radio broadcasts. That is it. They do not identify an objective of the alleged conspiracy, a meeting of the minds regarding this non-existent objective, any unlawful acts, or any resulting damages. *See Triplex Communications,* 900 S.W.2d at 719- 20. There is certainly no "factual content" in the Amended Complaint "that would allow the court 'to draw the reasonable inference that the defendant is liable for misconduct alleged.'" *King v. Jarrett*, 2016 WL 11581949, *6 (W.D. Tex. June 17, 2016) (Yeakel, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). Appellants were required to show Appellees were in a conspiracy to defame them, not merely that Appellees happen to know each other. Merely working together in general is insufficient; to hold otherwise

would mean that if a pitcher intentionally hits a batter with a ball, then the left fielder and the television broadcaster must be liable as conspirators.

Appellants' argument is otherwise barred by the intracorporate conspiracy defense; a corporation cannot conspire with its employees because the acts of a corporation's agents (at least as between FSS, Alex Jones, David Jones, and Owen Shroyer) are deemed to be the acts of the corporation itself. *See Fojtik v. First Nat'l Bank of Beeville*, 752 S.W.2d 669, 673 (Tex. App.--Corpus Christi 1988), writ denied per curiam, 775 S.W.2d 632 (Tex. 1989); *see also Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952), cert. denied, 345 U.S. 925 (1953). Having failed to allege facts necessary to maintain a claim of civil conspiracy, no conspiracy liability can be found.

Appellants cite the Restatement (Second) of Torts, § 577, cmt. f, for the proposition that a principal is liable for the conduct of his agents. This argument overlooks the fact that, assuming such a relationship exists, this liability only flows in one direction; an agent is not liable for the actions of the principal. This Restatement principle has no application

for the vast majority of Appellees.[26] And, as Appellants fail to show any agent has committed a tort, there is no vicarious liability.

To the extent Appellants re-assert their surrogacy theory (*i.e.* that Infowars Appellees are all acting at the behest of Stone), this theory has been tested in numerous courts time after time and **has always failed**. *See, e.g., Corsi v. Stone*, Case No. 19-CA-013711-AXX (15th Jud. Cir., Fla. Aug. 12, 2020), ROA.1013, ¶1. The District Court agreed with a growing body of case law that Klayman has conveniently created. This case law universally rejects the novel theory that (to put it colloquially) anyone Klayman has ever encountered who criticized Klayman has entered into a conspiracy with Roger Stone to make him look bad.

## 3.0   The District Court Properly Denied Leave to Amend

Appellants argue that it was erroneous for the District Court to dismiss their claims without leave to amend due to various pieces of extrinsic evidence attached to their oppositions to the parties' various

---

[26] Appellants failed to object to the Magistrate Judge's finding that the owners of limited liability companies are not liable for the torts of the entity absent the corporate veil being pierced. (ROA.2004). Appellants continue to fail to address this point, and no corporate veil has been pierced.

motions to dismiss. It does not appear that Appellants are challenging the District Court's denial of their post-judgment motion for leave to amend, where leave was denied "[b]ecause the final judgment bars additional pleadings in the case." (ROA.3556.) Though they designate this order in their Notice of Appeal, their Brief contains no argument related to the order.

## 3.1   Failure to Request Amendment

As for the District Court's order of dismissal, Plaintiffs' argument is fatally flawed from the outset. This Court in *Willard*, 336 F.3d at 387 held that, in the absence of an explicit request to amend a complaint in the face of a Rule 12(b)(6) motion, it *will not review* a district court's decision to dismiss without leave to amend. It held that "[a] party who neglects to ask the district court for leave to amend cannot expect to receive such a dispensation from the court of appeals." *Id*. A formal motion under Fed. R. Civ. P. 15(a)(2) is required to preserve this issue for appeal, unless "the requesting party has set forth with particularity the grounds for the amendment and the relief sought," typically in an opposition to a Rule 12(b)(6) motion. *Id*. It noted that a "brief statement" in an opposition to a motion to dismiss that "does not expressly request

that [the plaintiff] be given leave to amend and does not provide any indication of the grounds on which such an amendment should be permitted" does not constitute a sufficient request for leave to amend. *Id*. While the Court also noted there that the defendant did not file a motion for reconsideration in which he could have sought amendment, it did not hold that doing so would have been sufficient to preserve the issue for appeal.

Appellants made no mention of amending their FAC until their Motion for Reconsideration. Their Oppositions to the parties' motions to dismiss did not request leave to amend, nor did their objection to the Magistrate's Report and Recommendation, nor did their procedurally improper Motion to Vacate the Report and Recommendation. They eventually filed a motion for leave to amend, but they waited until after judgment was entered against them to do so, making it too late. Appellants did not properly preserve the issue, and the District Court did not abuse its discretion in dismissing without leave to amend.

## 3.2   Appellants' Request to Amend Was Untimely

Even if this Court were to review the District Court's refusal to allow amendment substantively, there were reasons aside from futility

to deny amendment and there was no abuse of discretion. Even if made prior to judgment, any request to amend would have been fatally late. The District Court's scheduling order set November 1, 2020, as the deadline to file amended pleadings. (ROA.764-766.) By November 1, 2020, all parties' motions to dismiss the FAC had been fully briefed, with full explanations of how the FAC was deficient and with Appellants' declarations already in the record. Despite this, Appellants did not seek leave to amend and did not request an extension of time to amend. Plaintiffs waited more than seven months after the deadline to seek leave to amend.

Fed. R. Civ. P. 16(b) provides that a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge." This standard requires that the "party seeking relief to show that the deadlines [could not] reasonably be met despite the diligence of the party needing the extension." *S & W Enters., LLC v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003). The good cause standard requires consideration of four factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the

availability of a continuance to cure such prejudice." *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir 2003).

Appellants addressed none of these factors to support their late request to amend, and still refuse to do so on appeal. Over a month before the deadline to amend pleadings, Appellants had already filed the declarations that they claim contain factual allegations that can withstand a motion to dismiss. This would have been the time to seek leave to amend, and Appellants' failure to do so was sufficient reason to deny leave to amend. *See Steptoe v. JPMorgan Chase Bank NA*, 2013 U.S. Dist. LEXIS 4942 (S.D. Tex. Jan. 12, 2013) (holding an unconvincing or conclusory explanation for delaying a motion for leave to amend a complaint more than eight months after the scheduling order deadline sufficient on its own to deny leave to amend pleadings for lack of good cause). There was no abuse of discretion.

### 3.3 Appellants Repeatedly Failed to Cure Deficiencies

Appellants were notified several times, both by Appellees and other courts, that their claims and legal theories were fatally flawed. "[L]eave to amend properly may be denied when the part[y] seeking leave has repeatedly failed to cure deficiencies by amendments previously allowed

. . . ." *Willard*, 336 F.3d at 387. Though Appellants only filed a single amended complaint, they did so after Infowars Appellees filed and fully briefed a motion to dismiss explaining how their claims were meritless. Yet the FAC did nothing to correct these deficiencies. In total, Infowars Appellees notified Appellants *seven times* prior to Appellants' late motion for leave to amend how their claims were defective, with Appellants doing nothing to attempt to fix their complaint's deficiencies. The proposed, futile Second Amended Complaint also does nothing to fix these problems.

More importantly, this case cannot be viewed in isolation. Appellants brought nearly identical claims in state and federal courts in Florida and were told by multiple judges that they were meritless. *Klayman v. Infowars, LLC,* Case No. 0:20-cv-61912 (S.D. Fla. Nov. 18, 2020); ROA.668-728, 1127-1155; FN 1, *supra.* Though only Klayman is identified as the plaintiff in the caption of 2 of these 3 cases, Klayman's suits exhaustively recount Corsi's grievances with Stone and the complaint in the first-filed Florida federal case repeatedly refers to Corsi as a plaintiff. (ROA.670, 672-673, 675-676, 680-681 at ¶¶3, 15, 27, 48.) The initial Complaint in this case was filed by Klayman on behalf of

himself *and* Corsi, and the allegations in all the complaints are functionally identical.

Given the number of duplicative meritless lawsuits filed, the repeated explanations from both Appellees and other courts as to how their claims were meritless, and the complete failure to address any of these problems, it was not an abuse of discretion for the District Court to dismiss Appellants' claims without leave to amend.

### 3.4    Appellants' Proposed Amendment is Futile

An amendment "is futile if it would fail to survive a Rule 12(b)(6) motion." *North Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 478 (5th Cir. 2018). Appellants' proposed amendment would only add the extrinsic evidence attached to their oppositions to the parties' motions to dismiss. Even an amended complaint containing these declarations verbatim still would fail to survive a Rule 12(b)(6) motion.

The declarations are only potentially relevant to the issue of actual malice. Corsi's sole basis for alleging actual malice as to Infowars Appellees is that they knew and worked with Corsi, and thus somehow must have known he was not a "liar" or an "alcoholic." Of course, as discussed above, these are not even statements any Appellee made – they

are Appellants' fanciful re-drafting of what was actually said. (*See* Section 2.2.1.1, *supra*.)

Even if these were accurate allegations, the claims are nonsensical; a coworker would not necessarily know how a colleague conducts himself off the clock. Corsi's declaration is silent as to actual malice regarding any other statement. There is not a single factual allegation that tends to show actual malice.

Klayman's declaration has similar problems. It alleges only that Infowars Appellees knew and worked with him, and thus must have known Stone's statements about him were false. This is not a sufficient allegation of actual malice, as it does not allow for an inference of knowing falsity or recklessness, particularly where the statements identified by Klayman are expressions of subjective opinion. The knowledge Stone allegedly had regarding the falsity of these statements cannot be imputed to Infowars Appellees, and Klayman makes no argument as to why it should be imputed.

Appellants' declarations contain no statements bearing on their theory of conspiracy or their Lanham Act claim, and Appellants' entire Initial Brief is silent as to their assault and IIED claims. The proposed

second amended complaint would fail to survive a Rule 12(b)(6) motion, and amendment would be futile.

## 4.0   The District Court Properly Stayed Discovery

Appellants finally contend that Magistrate Judge Austin erred by staying discovery during the pendency of the motions to dismiss, and that if they had been allowed to conduct discovery, Appellees' motions to dismiss would not have been granted. There are multiple problems with this argument, and Appellants fail to show any abuse of discretion.

Appellants failed to preserve this issue for appeal. Fed. R. Civ. P. 72(a) provides that a party may file an objection to a magistrate judge's order on a non-dispositive motion, and that "[a] party may not assign as error a defect in the order not timely objected to." Because Appellants failed to file an objection under this rule,[27] they may not assign as error any alleged defect in Magistrate Judge Austin's order staying discovery and have waived all argument on this issue.

_____

[27] Appellants' motion to recuse Magistrate Judge Austin contained a request to "vacate the order staying discovery." (ROA.1715.) However, this motion made no reference to Fed. R. Civ. P. 72(a) nor contained any argument as to how the order staying discovery was clearly erroneous or contrary to law, and Appellants elsewhere conceded that a motion to vacate is not a Rule 72 objection. (ROA.2402, ROA.2544.)

Even if Appellants had filed a timely objection, however, they confuse the standard of a Rule 12(b)(6) motion. No discovery is required to defeat a Rule 12(b)(6) motion because the factual allegations in a complaint must be taken as true and any information obtained during discovery could not be considered in deciding one. Interpreted charitably, Appellants appear to be arguing that discovery being stayed deprived them of the ability to obtain information which could then be used to include new allegations in a second amended complaint. But, even with this argument (which Appellants do not make), there would still be no error because Appellants made no attempt to take discovery until three months after the deadline to amend pleadings had passed. The District Court was well within its discretion to stay discovery.

## CONCLUSION

For the foregoing reasons, the Court should affirm all orders of the District Court appealed by Appellants. Appellants have burdened Infowars Appellees with this frivolous litigation long enough, and this Court should decide with finality that Appellants' claims cannot go forward.

Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza
Jay M. Wolman
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117

Bradley J. Reeves
REEVES LAW, PLLC
702 Rio Grande Street, Ste. 306
Austin, Texas 78701
Tel: (512) 827-2246

*Counsel for Appellees Infowars, LLC, Free Speech Systems, LLC, Alex E. Jones, and Owen Shroyer.*

Dated: February 16, 2022.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of February, 2022, a true and correct copy of the foregoing document was electronically transmitted through the Court's ECF system to all counsel and parties of record.

*/s/ Marc J. Randazza*

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificate of counsel, addendum, and attachments), this document contains 9,681 words.

2.     This document complies with the typeface requirements because it has been prepared using Microsoft Word in 14 point Century Schoolbook font.

*/s/ Marc J. Randazza*